Good afternoon, Your Honor, and may it please the Court and the members of the United States. I'd like to defer three minutes for rebuttal. Three minutes, and it's Ling or Ling?  Ling, okay. Just ignore the I. Okay, thanks. The superseding indictment in this case more than adequately alleges a securities fraud conspiracy in the form of a prototypical pump-and-dump scheme. The District Court's dismissal of the superseding indictment stemmed largely from two errors. First, and more fundamentally, the District Court misconstrued and misapplied the Supreme Court's opinion in Simonelli. And second, the District Court seemed to read in to the fraud statutes the kind of mirror image requirement that this Court has expressly rejected. This Court should correct those errors and reverse. Let me begin by briefly defining the scheme at issue here as alleged in the indictment. Because although the indictment is on the longer side, it contains a lot of factual allegations and quotations from social media posts and things of that sort, I think the basic structure of the scheme here was very simple. Before you do, remind me, the superseding indictment was February of 23. Correct. And then the first motion to dismiss hearing and a bill of particulars was the next month, March of 23. I believe that's correct. But then the actual dismissal order was on the eve of trial in March of 24? Yes, March of 2024. That's correct. Okay. And I'll just sort of preview my concern at that first hearing, the government attorney, Mr. Armstrong. It was clear, it is clear to me that Judge Haynen was unsure what this, it's a long indictment, 44 pages, but he was asking questions like, well, don't you still have to list the misrepresentations? And don't you have to list the victims? And Armstrong was saying, actually, that isn't required in an indictment. You'll see that evidence at trial. Do you recall those statements? Yes, I do. So was this indictment, when the judge was trying to grapple with it, is it one where you don't even have to list the false statements? Nor do you have to specify the people whose money was taken? Well, I have a few thoughts about that question, Your Honor. So I think the first response is, as a general matter, of course, at this stage, we're looking at the indictment through the lens of Rule 7. So the pleading requirements are, the bar is relatively low in terms of alleging sufficient facts to put the defendants on notice. So whether or not the indictment alleges or names every victim investor, I don't understand that to be required at this stage, as long as the indictment is sufficiently specific to put the defendants on notice. And I would say as a general matter, especially when it comes to market manipulation schemes or pump-and-dump schemes, I don't know that it would be realistic to expect an indictment to list every individual victim investor, particularly what we're talking about. But you will have to put someone on to say, I was materially induced to give up my money. I agree, as a general matter, victim testimony would be the best way to prove those kinds of elements, material misrepresentation, deprivation of money or property. My understanding from the trial team is that that's the plan. That kind of evidence will come in at trial. These aren't really Simonelli points. It's just I think my view is, Judge Haynen was thinking, I don't see a fraud where one defendant took money from one victim. I'm a little confused. Help me, government. This is an open market. So he's really worried about privity. Do you agree with me? I agree with you that there is a sort of privity concern, and it does come through in Judge Haynen's opinion. I think respectfully that concern is misplaced because there is no privity or contractual privity requirement in the fraud statute. So again, I agree that this indictment, as Your Honor said, is on the longer side. It contains a lot of allegations about social media relationships between the defendants and their followers. But I do think the structure of the scene here is very straightforward, notwithstanding. And the only order we're looking at is a dismissal based on Simonelli. Is that correct? Exactly. Okay. So go ahead with your argument. And I would also say just for completeness, I think the district court's order denying the government's motion to stay being appealed also adds a gloss on what Judge Haynen was thinking. But yes, the order being appealed is the order granting the motion to stay.  He denied a motion to stay? Yes. There is another order denying a motion to stay. That's a docket number. It's 642. So the dismissal was for prejudice, and he didn't stay it. What does that mean happens? So I believe – and I apologize. I don't have the rule in front of me. But I believe while the government appealed and the dismissal of an indictment is pending, the district court still retains some authority to issue retrial orders. I see. But in any event, yes, the operative order is the order granting the motion to stay. Quick question. Oh, go ahead. Well, Simonelli – the language in Simonelli, it talks about schemes to deprive people of money, property, whatever, but to deprive. The indictment uses the language inducing people to part with their money and property. Is there any meaningful difference between inducing people to part with and depriving people of? I think at least on these facts, there is not, and there are a couple of reasons why that's the case. So first of all, the indictment contains a number of paragraphs where it alleges that victim investors were induced to purchase. So they were induced to make purchases of securities. So paragraph 1, paragraph 14 contain those types of allegations. Under the circumstances here, we're talking about basically a pump-and-dump scheme. Those allegations are effectively allegations that victim investors were induced to part with or be deprived of their money because they had to make those purchases. If there were any doubt, and this I think relates to a Simonelli-adjacent issue that the district court also addressed, if there were any doubt that a victim in that situation is being deprived of their money, that doubt was resolved in the government's favor by prosthesis. Because prosthesis held that even if the victim gets a good pro quo of equal value when they're fraudulently induced into making a transaction, that victim has still been deprived of their money and property. This court, of course, had already done in the Green Law, as we explained in our opening brief, relying on the Supreme Court's earlier decision in Shaw that there is no pecuniary loss requirement. But to the extent that there was some uncertainty, and I think there was, judging from the fact that Judge Hayman, for example, cited the Eleventh Circuit's opinion in Takala in his order granting the motion to dismiss, that uncertainty has, again, been resolved. Is Green Law's good law even post-cousis? I understand it to me. I don't see anything in Green Law that cousisis overrules. Again, Green Law agreed with, I think, the basic proposition that the Supreme Court raised in cousisis, which is that there is no pecuniary loss requirement. Cousisis, like Simonelli, also uses the depriving language. But is your view, if I hear you correctly, that on these facts, depriving people and inducing people are potato patato? I agree with that, Your Honor, again, because the inducement in this case is a purchase with money. And cousisis confirms that being fraudulently induced into that kind of transaction is a deprivation, notwithstanding the receipt of a quick pro quo in exchange. Let me ask you even more specifically with regard to inducement. Does it make a difference if the defendants are talking about their own strategy in terms of what they intend to purchase and hold and sell, or whether they're making representations about the quality of a particular stock or security? So, of course, the false statements that induce the deprivation have to be both false and materially so. And there may be some debate in the trial, and I expect there will be, over whether particular statements were actually false or misleading or material. Or an opinion, a defendant's opinion that somebody acted on. Well, if this person thinks X, then I should act on that. Yes, exactly. And there are some allegations, of course, along the lines of the defendants told their followers, I am going to hold on to my investment. I think the security would reach a particular price. I would say— There's no false statement in that. The falsity is as to the value of the security, right? So, a couple of things. So, yes, I think generally when there are statements that are alleged to be false about the value of the security, the underlying value of the company, when they make statements about things like due diligence or what they call catalysts that they allegedly or that they purportedly thought would increase the price of the security in the future, I think those kinds of statements are more obviously objective. Is that just a function of materiality? It's partly a function of materiality. I think also it's a function of whether a statement is susceptible to being false or true. And the rest of my answer to Your Honor's question, Judge Higginson, is that a statement of belief can be false to the extent that it falsely represents, I sincerely hold the belief. So I believe this security is going to increase in value. Whether it does or not, if the belief is sincerely held, may not be true or false. Because you remember, Judge Hayden, one concern was sort of the limiting principle, which is every time someone sort of cries out to the open world what you could call puffering, this thing's worth a ton. And then they turn around and sell it. Are they all facing felony securities fraud prosecutions? No. And I think the important limitation in which the Supreme Court of New Jesus spends a fair amount of time emphasizing is materiality. And as we point out in a footnote in our own library, not every false statement, particularly statements of negotiating position, statements of puffery where sellers talk, those kinds of statements have generally been rejected as being materially false. I mean, I appreciate both of you have briefed this superbly, only because I'm assuming you have the sophistication to answer this. Is there a jury instruction in these type of open market frauds that tell the jury you can't convict because of puffery? I haven't seen a jury instruction along those lines, and I don't believe this court has a pattern. Certainly that's something that we might discuss as we wrap up for trial, but I can imagine a jury instruction along those lines explaining the difference, particularly when it comes to materiality. But I think to answer Your Honor's question, that really is the limiting principle here. As I read Judge Hayden's opinion— And intent to defraud. Of course, and intent to defraud as well is one of the limitations. And with respect to the superseding indictment, I think intent to defraud is narrowly alleged, as are the other elements of securities fraud. With respect to Simonelli, the district court's opinion, I think, is primarily reliant on a misinterpretation of Simonelli. Because Simonelli, of course, was a narrow opinion of the Supreme Court. Simonelli tells us that the right to control theory of property, really, as developed by the Second Circuit, is inaccurate. The idea that there is a right to potentially valuable economic information, necessary to make economic decisions, is a property right. That idea is what Simonelli rejects. But Simonelli, in the court's opinion, and of course emphasized in Justice Alito's concurrence, is very clear that it goes no further than that. And it doesn't rely on the government's ability to retry the defendants on the theory that what they were seeming to obtain was the money in the contracts as part of the Buffalo Billion issue. And indeed, the case is now being remanded back to the district court for the government to do just that. So in this case, the theory of fraud is not that the victim investors were merely deprived of information, which is what the district court seemed to believe. Of course, the victim investors were deceived. And as I think this court explained in Greenlaw, deceit, of course, is part of any fraud scheme, but that doesn't make it the property interest that is the object of the fraud. In this case, as the superseding indictment alleges, the object of the fraud, and logically the only way that Huffington's scheme could have succeeded, was to induce victim investors to part with their money. And as we explained in our briefing, including our post-receases letter brief, quite a number of courts have distinguished the simile on exactly that basis. Probably the best example of which is Precisus, in which the Supreme Court explained that the fraudulent inducement species of fraud is not merely a repackaging of the right to control, because the protected interest is different. In a fraudulent inducement case, somewhat like this one, the object of the fraud isn't merely deceit. It's not depriving victim investors of accurate information, although that is part of the scheme. The object is to induce them to spend money. And to the extent that the district court believed that the scheme was indifferent to its effect on the victim investors, or that the victim investors received the benefit of their bargain because they obtained securities in exchange for their money, I think Precisus forecloses that line of reasoning, because the victim investors were still deprived of their money when they were fraudulently induced to make those purchases. It still sort of does come back to the privity, in terms of Judge Hanen's thinking there's no allegation anywhere in here that these defendants got this victim's money. What they wanted is the stock to get inflated, and then they dump it. And that's their money. So there's just not that equivalence. So I guess to put that as a question, what's our Fifth Circuit's clearest statement that privity is not required? This court's clearest statement that privity is not required comes from Baker. In Baker, this court clearly held that there is no mirror image requirement. So the money that flows out of a victim's pocket doesn't have to be the same as the money that flows directly into a defendant's pocket. The facts of Baker are analogous to the facts of the superseding indictment, because Baker also essentially involved investment fraud. The defendant and Baker lied to investors to get them to invest in Arthur Care. Those investors parted with their money in exchange for their shares, and the defendant's gain was not the mirror image of those investors, and the defendant wasn't in privity with those victims. The defendant was trying to get bonuses and appreciation of the defendants on stock options. But this court held that that was sufficient. Again, back on chronology, I noticed that Judge Hainan took guilty plea, I assume to the same scheme, from this fellow Knight. Yes, Mr. Knight, that's right. But he took the guilty plea post-Simonelli. Yes. If the problem in this charge, the scheme charge, were a Simonelli problem, how could he accept that guilty plea, or did the fact that Mr. Knight talked about idiots, sort of, and I don't say that sarcastically, but apparently he did, that somehow ties up his case differently than these defendants? Do you have a thought on that? So Mr. Knight and I believe the other uninducted attorneys here, Mr. Stavros, are both still pending sentencing. They're sentencing at the state. Right, but he took a guilty plea. Yes. I understand the logic of his opinion as applying equally to all of the participants in the scheme. So if this court were to affirm, I think we'd have to revisit those. But I guess I'm wondering, do you have any idea from the record how he could interpret Simonelli the way he did and still accept a guilty plea to something he didn't think was a crime? Based on my understanding of the record, I don't have a good answer to that, Your Honor. I didn't participate in those proceedings. I wish I did, but I don't have an answer to that. The last thing that I would say on the mirror image front is that if the district court were correct that this kind of scheme were beyond the reach of the fraud statutes, that would effectively incriminate the logs lost on securities fraud or market manipulation type fraud schemes from the reach of these Title 18 property fraud statutes. Because as a general matter, in an investment fraud scheme and a market manipulation scheme, the defendant isn't in contractual privy with the victims. The defendant is lying to the market to induce victim investors to invest. Smith, for example, in a seven-certain case that we brought to this court's attention in a 28-J letter, that case, I don't see how he could have been prosecuted under the logic of the district court's opinion here because the spoofing lies that the defendants disseminated to the market were, as the seven-certain put it, filtered through the entire market. The deception wasn't directly communicated from the defendant to the victim and the property didn't feel that way. Your time, I appreciate it. Thank you. You've saved three minutes for rebuttal. Thank you, Your Honor. Mr. Rosen? Jeff Payne, Your Honors. May it please the Court, Eric Rosen on behalf of the defendants, the appellees here, John Langercheck, and also speaking for everyone else. We're asking this Court to affirm the district court's dismissal of the indictment because it simply doesn't plead a scheme to the fraud. The issue is not, as the United States pointed out, whether the indictment alleges a specific victim or not. It doesn't allege any victim at all. That's the issue. There is no harm actually alleged. It's a fundamental misconception, the government's argument. But the district court is really clear he didn't actually rule on a green law deficiency. He said this is Simonelli. He thought it was talking about information, not property and money. That was the very clear conclusion. He says, I'm troubled by a lot of things, but this is squarely controlled by Simonelli. Well, he talked about green law involved two issues, a scheme intended to fraud and a scheme to the fraud. He said it may fulfill the intent of the fraud as the scheme to the fraud. What he did was he looked at the sort of open question left in green law. Green law left that open question out. But he ultimately says, I'm quoting 9 to 12, I want to be clear, this survives green law, but it fails Simonelli. And two pages earlier he said, quote, Simonelli applies squarely. So I guess I'll turn that into a question. Are you saying this indictment is deficient under Simonelli and nothing else, or is your argument different? Well, it's deficient as it's under the scheme to the fraud. Is it deficient under the Supreme Court's Simonelli reasoning because what was taken was information, not money? Absolutely. It's absolutely deficient under that ground. However, the issue with green law and why it came into play in this case was not so much the intent to the fraud issue but the scheme to the fraud because the Fifth Circuit left open the issue of whether a scheme to the fraud can have, in the jury instructions, financial gain or harm to a victim. And so he said based on that, there is no harm to the victim. He went through Shaw and looked at that. And because of that, the Simonelli- Then what about the 28J, Judge Kearse, Judge Easterbrook's opinion, and Smith? Because the spoofing looks really like a pump and dump. The victims who are harmed are very similar, right? These are investors that are duped to think that the market has given them a value, but in fact it's the manipulator who's given them the value. How is that distinguishable in terms of harm? Okay. But that was an issue in Smith too. If the market price gets changed, one person wins and another person loses. That's the issue. If you're lying about a commodities fraud contract, by definition the object of the harm is to harm victims. That's entirely different from an actual functioning stock market where there's supply and demand. Not everybody loses. Stocks can go up. And you think that paragraph where Judge Kearse and Easterbrook say securities frauds are open market frauds, what's happening is the public has been deceived that the market's determining the price, but in fact it's the inflator spoofer. Again, how does that tie into, oh, what's crucial here is it's commodities market versus securities? I don't remember that in the opinion at all. It's just the nature of why spoofing is a crime. It's because it injects a misrepresentation, the actual price of the commodity, and the second part, remember, it's not just deception, it's deception and to deprive someone. And the second part is because of that misrepresentation, Your Honor, the victim automatically has lost money. It automatically has been harmed because it's a zero-sum game. And that's why a stock market is different. The government relies on generic accusations of it being a pump-and-dump scheme, and that's the problem. They say there has to be a victim because we call it a pump-and-dump scheme. But not all pump-and-dump schemes are created equal. Traditional pump-and-dump schemes... But they're going to have to put a witness on, and, in fact, Mr. Armstrong said he would. They have to put witnesses on that will say, because of these misrepresentations, I bought the stock I did, we were materially duped because of the false statements about the value. The government's got to put those on. And I agree, but even if they put that on, where is the deprivation? And that's the problem. Deception, the indictment, over and over again... Well, they lost their money buying the stocks. But there's no allegation that it was because of the... No, but they'll get on the stand and say it. Armstrong said they would. You heard opposing counsel say they would. It's pretty far afield from Simonelli, isn't it? Well, but the important problem is the superseding indictment does not say that. But that's... If we reinstate the indictment, you can move for a bill of particulars. You already have, right? But the question is, is there a legal deficiency here? It's not what information do you have already. Right. Well, the legal deficiency is that there's no object... There's no object pled to harm an actual victim. That's the problem. That's what the district court identified. If you read it very carefully, the government has invented a word called victim investors. There is no such word. There's nothing about a victim investor at all in the indictment. But isn't that a function of privity? Is that... Am I thinking about it the right way? You're attacking privity by saying that there's no person directly harmed? Or are you talking about something separate and apart? The privity thing, I think, is a red herring, Your Honor. It's about the difference between a market that functions on supply and demand versus the traditional pump-and-dump market, which is a phony market. There is no actual market there. The whole thing, and what the cases that the government cites do, are cases where the entire market is artificial and fake, wash trading, match trading, control groups. That's not the issue here. The stocks at issue here were real stocks, real companies, and defendants didn't control them. The only allegations are deception. There's no issue. There's absolutely no allegation here that any object was to harm them. And I think that's... One of the things about influencers, Your Honor, is their entire business model is not predicated on harming their followers. Their business model is predicated on gaining followers. You wouldn't have as an object to harm your followers if you wouldn't go anywhere. People follow them because they thought they provided good stock. Well, the harm is this, what was called, amorphous public. These people who Knight called idiots. They see the false statements, they go buy it, it elevates the price of the stock, and that's when the manipulators who have falsely described the stock dump it. So they have harm because they've induced a lot of people to buy a stock based on their fake puffery. The minute all these, on Knight's word, idiots do that, they sell. So these people are being deprived of their money. That's the theory. I think that was true. If there's anything in the indictment about the stock then it's falling after that. And there's nothing in there. The definition of pump and dump in Black's logic that they even cited says the market crashes after. That's why this is a fundamental difference. What the government is doing, what they've injected into the indictment is a victim. It's just out there. And that's the problem. I agree, that was what Judge Heenan was saying. Well, how do we know the people who bought them ever saw any of these posts? That was his concern, but that's just a trial proof issue. The government may have a really high burden in these cases. I think his opinion narrows it down significantly to say, show me where he asked over and over again, and I was in the trial court, asked over and over again, what is the harm? It's not just deception, as Mr. Armstrong said, it's deprivation. Where is it saying in the indictment that the object of these defendants is to harm the victim? Any victim. You were there, but now I'm looking at page 37 of the final dismissal hearing on the eve of trial, a question from the court, help me, what role do we think victims would play, Mr. Armstrong? I certainly expect that they'll prove up materiality. They'll prove how they relied, specific witnesses, on the false information the defendants were putting in the market. So the government's going to put these victims on. But he didn't dismiss it based on materiality. I agree with you, that's a trial. But it's an admission that they're not believing that the object of the fraud was to harm victims. In fact, I think it's paragraph 12, sorry, my light is dim here, but it specifically says, the defendants used their credibility to maximize their own trading profits through their tweets and posts in Atlas Trading Discord. Profits, not a crime. And then it goes on to say, often at the expense of their Twitter followers and members of Atlas Discord. How is this distinguishable from Kelly v. Bridgegate? Where they wanted to shut down the bridge lanes, and then as an incidental byproduct of that, just like often at the expense, as an incidental byproduct of that decision, they harmed the state funding of property because of people's time and salary that they had to pay. The Supreme Court shut that down. They say the object, the object of the scheme, not the incidental byproduct, has to be money or property. And the very allegations in the indictment say, we went through it in excruciating detail below, but the very allegations say often at the expense of the Twitter followers. They're admitting that the object was not to harm them. That's the problem here. There is no object, I like most indictments. To induce them to purchase, hence lose money, to elevate the stock. But that's the thing. There is that would be true, Your Honor, if there was a corresponding collapse of the stock after. I agree with that. There is not a single paragraph in this indictment that talks about anybody being harmed, any stock collapsing, or anything like that. That's why the government has to rely on these cases where there's a complete artificial market. Here, this is a bunch of people, like millions of others, injecting shatter into the market. The only difference is they have a large Twitter following. But for the government, it didn't matter. There is a... Again, I appreciate the fluidity and velocity of argument, but you were two of my questions to him. How could this district judge have accepted Knight's guilty plea? It's a complicated timeline, Your Honor. We didn't brief. I believe, I'm not 100% positive, that Knight pled guilty right off the bat in March, April, May. I think he pled in February of 2024, right before this dismissal occurred. I may be wrong. There were two. Remember, there were two rearrangements. Knight's is not until February of 2024. So it's one month before he dismisses. Everyone's got Simonelli. I believe those guilty pleas have been held in abeyance. They have the ability to withdraw pending this outcome here. They haven't been sentenced. Those cases are on hold. What about my other question in terms of, let's say you don't prevail. Let's say we reinstate. What's the jury instruction that you want the jury to hear to get the same, you think, elemental deficiency? What is the harm to victims here? How do you find that the object of their... So, jury, you must find, beyond a reasonable doubt, finish the sentence. That the object of this scheme, by defense, was to harm victims. And they can't do that. Judge Willard brought up, I think you said that it was dismissed with prejudice. It wasn't. It was dismissed without prejudice. I said that. I said that. Oh, sorry. I apologize. I made a mistake. Let's not give him a mistake. It was dismissed without prejudice. And that's a very interesting problem here because why don't they just go back to the grand jury, insert a paragraph that talks about the victims. We wouldn't even be here. It's been a year since this whole thing came down. Granted, since this happened. But the reason is, is because they can't prove that. They can't show that the scheme, in a major market with thousands of other buyers, a fluid interplay of supply and demand, which is the crux and the gravimodal of market manipulation, they can't show that any object was to harm a victim. Over and over again, in the indictment, profits, profits, profits. That's not illegal. Deception to get profits is not illegal. It has to come at the expense of someone. The amazing thing about Coussis is that the government thinks it's good for them, they think it's good for us. He uses the term victim 50 times. 50 times. I think Greenlaw uses it 8 or 9 times. I know Bridgegate uses it at least 4 times. Going back to McNally in 1987. This is where it all started, right? Right. Deprivation of property. And the judge read this over and over and he's like, where is it? He invited the government to tell them where is it about deprivation? And they couldn't. They couldn't. The exhibits they created, why we put in the stuff about Dr. Garibaldi, was because it was all about profits. They got excluded because they couldn't show anything about fraud. And I know that generally you only look at the four quarters, but there's an uncontested fact that the government could not show that any of the money came from a victim or that there were victims. It's not about identifying individual people. It's not about privity. It's about the difference between a traditional pump and dump. A traditional pump and dump, which the government wants this court to believe, by using generic accusations in the indictment, which we don't have to credit, but using generic accusations and something here, where there's a huge, fluid market and they're injecting at best, and we dispute that, of course, but they're injecting at best deception into the market. But there's no single allegation that any stock took a hit because of that or did anything because of that. And I know we're not saying something like this could never be prosecuted. We're not saying traditional pump and dumps have nothing to do with that. That's a red herring, because there's no market at all. It's completely fake. Here, there's a completely fluid market. So the government's in a situation that this would harm anybody. We're looking for a very narrow decision. All I ask is you go through and see where does it allege that the object is to harm, and it just doesn't. The words, and they can't, which is why they didn't go back to the grand jury. We've gone to trial in April of 2024 instead of March of 2024. It would have been very easy for them to do that. But that's the fundamental issue with these new types of cases, these new types of where it's not that they control the market, it's not wash trading, it's not match trading, it's none of the traditional hallmarks of a control group. It's about people going on Twitter, not a crime, talking about stocks, not a crime, and the only alleged deception, the only deception is about their trading intentions. And under no circumstances whether it's under Simonelli about information being the object, and it clearly was, because the Twitter discord people, they're the alleged victims of this indictment. And that's the other problem. The indictment doesn't even allege that the whole market at all is a victim. The only people they talk about in paragraph 12 are the Twitter followers, the members of this discord. So it has to be the deprivation of information, because they don't allege that there's any, with specificity at all, that there's any artificialness in the market. And that's the whole problem Judge Heenan found after months and months of going at this, when finally we're at the pre-trial, a week later we're having trial, and there's nothing about any harm to a victim, and they can't go back into the grand jury and say there was. The difficult end, back on Smith, I'm reading this, the defendant's argument would fail even without Coussis. Unlike the transactions in Coussis, where the defendant directly lied to purported victims, the deception from spoofing, bracket, pump and dump, is filtered through third parties and the market as a whole. Exactly. But that is their theory here. There's a false statement that goes to the market as a whole, it induces the market to buy based on false information, that's how they profit. So we got a misrep. I agree with you. We have lost money. Induced by the misrep. But the object of the spoofing has to be an object to harm investors because it's a zero sum. Well, they don't say that. In other words, the purpose is to inflate the value of the security, which they do and in spoofing, they just never buy it. As far as I understand, maybe I'm wrong, the difference of the pump and dump is they actually buy it then they dump it. Exactly the same injury and victimhood. I would agree with you. Traditional pump and dump, where there's a circular market that's not accurate is equivalent to spoofing. There's a reason why it's spoofing but it only occurs in commodities cases and it's because of this effect. Right, but they do say akin to. They draw the direct, it's dicta, but they draw a direct analogy to the pump and dump security story. Maybe the answer is Smith's Law, but that language is incorrect. But you're trying to draw a distinction. You have to apply it to the facts. The facts are it's a commodities market, they talk about futures and the definition of a future is it's a contract, one side wins, one side loses, if there's a misrepresentation that drives the price. Here the problem is that there is no closed market. There is no zero-sum game in a stock market that's influenced by the natural forces of supply and demand. Counselor, if we agree with you, doesn't that have far-reaching impacts for any market manipulation scheme by a non-insider under 1348? No. First of all, they could have charged this case under Title 15 which has no property requirements at all. We don't think that they could have proved reasonable investment. To the extent that they want to go that route, that's whatever. Take your pick. There's still an SEC case out there. All we're asking is very narrow readings. This case specifically, not any other case, has nothing in the indictment itself about the object being to cover. It doesn't even have an object paragraph, which is sort of stunning. I don't see how the government can say that there are victims out there when none are alleged in the indictment. Thank you, Counselor. Government reserve three minutes. Good afternoon again. Thank you, Your Honor. Just three brief thoughts on the whole. First of all, I'm very pleased to say I think we agree with my opposing counsel that privity is a red herring, that I understand the opposing counsel to agree that there is no privity requirement. Second, with respect to the harm required, I think my colleague's presentation flies in the face of Cursiss's because I understood him to argue, among other things, that simply inducing someone to buy does not harm their property interests. But Cursiss's could not be correct. Inducing someone into a transaction in which they give up their money or property, even in exchange for something of equal value, is fraud. That is, the fraudulent inducement theory that Cursiss's holds is viable. So to the extent that opposing counsel's argument of the district court's order depend on the idea that victim investors were not harmed because they obtained securities and perhaps even the value of those securities increased for some victims, that is irrelevant. That does not defeat the theory of fraud in this case. Is that the theory the district court adopted when it invokes Simonelli? I understand the district court to be saying a couple of different things about the victims here. I think the primary error that the district court committed was a misreading of Simonelli and a holding that all the victim investors were deprived of was information. I also understood the district court to be saying where the district court wrote that the victim investors received the benefit of a bargain. I think that's the kind of reasoning that Cursiss's hold closes. So I agree, I don't think that's the primary basis for the district court's holding, but it does seem to be part and parcel of the district court's reasoning. But what about our dialogue with spoofing as a commodities market thing and it has no real bearing on securities fraud? Well, that brings me to my third point. I think throughout this appeal, the defendants have been struggling to distinguish this case from other cases that they concede are still fraud. What they refer to as traditional or ordinary pump-and-dump schemes, commodities fraud. I have not heard a meaningful, factual distinction between this case and those cases that supposedly can still be prosecuted under Judge Newman's theory. So for example, whether there's a completely fake market or a closed market, there are many securities fraud cases including pump-and-dump cases that don't involve what I think I would characterize as a fake market. United States v. Warhol, who was sent an opening brief as one example. Smith is another where I don't understand how one can call the market fake. Just in the last 20 seconds, if you were allowed to elaborate on the indictment, what would the object be? How would you describe the object of this scheme? The object of the fraud, which I believe is alleged in the indictment, was to induce investors to purchase securities so that the value of those securities would increase and the defendants would profit. So there is both a loss alleged in the pockets of victim investors and a gain to the defendants. That is structurally how pump-and-dump schemes work. I agree with Your Honor, Judge Engelhardt, that I think the district court's opinion here risks foreclosing a large part of the securities fraud scheme. I can't give him more time, so I'm just going to cut you off there. I appreciate that, Your Honor, but you have the floor to reverse. Thank you. We appreciate argument, and we'll call the second case of the day.